PADOVANO, J.,
dissenting.
I believe that we interpreted the Workers’ Compensation Law incorrectly in Oswald and that we should now recede from the rule we adopted in that case. Nothing in the text of the applicable statutes suggests that there is a gap in which some totally disabled workers will be ineligible to apply for disability benefits. Moreover, the notion that there can be a period of time during which a disabled worker is not entitled to be compensated for his or her workplace injury is contrary to the most basic purpose of the Workers’ Compensation Law. For these reasons, I respectfully dissent.
The claimant in the Oswald case was nearing the end of his eligibility for temporary benefits but he had not yet reached maximum medical improvement. We held that “an employee whose temporary benefits have run out — or are expected to do so imminently — must be able to show not only total disability upon the cessation of temporary benefits but also that total disability will be existing after the date of maximum medical improvement.” 710 So.2d at 98. Because the claimant was not able to show that he would be totally disabled after the point in the future when he would reach maximum medical improvement, we held that he was not yet entitled to assert his claim.
The court stated in Oswald that it was creating a “narrow but necessary exception” to the longstanding rule that permanent total disability benefits are not awardable before the claimant has reached maximum medical improvement. Id. at 96-98. The point of the exception was to avoid “a gap in benefits” for severely injured workers. Id. at 101 (Padovano, J., concurring). However, in crafting this exception, the court departed from the plain language of the statute.[7]
The statute places a fixed time limit on eligibility for temporary disability benefits but it does not suggest that a disabled worker who has reached that limit is no longer entitled to any further disability benefits. Nor does the statute state or imply that a disabled but still improving worker must prove that the disability will continue to exist at some unspecified point in the future when a doctor is willing to say that the worker will have reached maximum medical improvement. The “narrow exception” the court made with these assumptions is not supported by the text of the Workers’ Compensation Law.
By the plain language of the applicable statutes, an injured worker who is still *628 totally disabled at the end of his or her eligibility for temporary disability benefits is deemed to be at maximum medical improvement as a matter of law, even if the worker may get well enough someday to return to work. In these circumstances, the claimant need not present medical proof that he or she has reached maximum medical improvement. The worker may immediately assert a claim for permanent total disability benefits, and the judge may award those benefits if the worker has proven that he or she is in fact totally disabled.
Section 440.15(2)(a) of the Workers’ Compensation Law provides that an injured worker who is totally disabled is eligible for temporary total disability benefits for a period of time not to exceed 104 weeks. The disabled worker must be evaluated by a doctor six weeks before the expiration of the 104-week period of eligibility, and the doctor must assign an impairment rating. The evaluation is required by section 440.15(3)(d), which states,
After the employee has been certified by a doctor as having reached maximum medical improvement or 6 weeks before the expiration of temporary benefits, whichever occurs earlier, the certifying doctor shall evaluate the condition of the employee and assign an impairment rating, using the impairment schedule referred to in paragraph (b).
§ 440.15(3)(d), Fla. Stat. (2006) (emphasis added). The use of the word “shall” in this statute makes mandatory both the duty to evaluate the worker and the duty to assign an impairment rating. If the injured worker is receiving temporary total disability benefits but has not yet reached maximum medical improvement, the evaluation must be completed, and the impairment rating must be assigned.
Section 440.15(3)(d) employs the term “impairment rating,” but this is merely a shorthand reference to a “permanent impairment rating.” This section is contained within section 440.15(3), which deals exclusively with compensation for permanent impairments. Moreover, when this statute is read in conjunction with other statutes to which it relates, the term “impairment rating” can only mean a “permanent impairment rating.” Section 440.15(2)(a), the subsection that sets the 104-week limit on eligibility for temporary total disability benefits, states in material part:
Once the employee reaches the maximum number of weeks allowed, or the employee reaches the date of maximum medical improvement, whichever occurs earlier, temporary disability benefits shall cease and the injured worker’s permanent impairment shall be determined.
§ 440.15(2)(a), Fla. Stat. (emphasis added).
The use of the term “permanent impairment” signifies that the disabled worker has attained maximum medical improvement. Section 440.02(22), Florida Statutes (2006) defines “permanent impairment” as “any anatomic or functional abnormality or loss determined as a percentage of the body as a whole, existing after the date of maximum medical improvement, which results from the injury” (emphasis added). It follows that the permanent impairment rating required by section 440.15(3)(d) is the equivalent of a medical finding that the disabled worker has reached maximum medical improvement.
This conclusion is supported by two more detailed provisions, subsections 440.15(3)(d)l. and 2., pertaining to the nature and content of the report the doctor is required to make six weeks before the expiration of temporary disability benefits. These subsections provide:
*629 1. The certifying doctor shall issue a written report to the employee and the carrier certifying that maximum medical improvement has been reached, stating the impairment rating to the body as a whole, and providing any other information required by the department by rule. The carrier shall establish an overall maximum medical improvement date and permanent impairment rating, based upon all such reports.
2. Within 14 days after the carrier’s knowledge of each maximum medical improvement date and impairment rating to the body as a whole upon which the carrier is paying benefits, the carrier shall report such maximum medical improvement date and, when determined, the overall maximum medical improvement date and associated impairment rating to the department in a format as set forth in department rule. If the employee has not been certified as having reached maximum medical improvement before the expiration of 98 weeks after the date temporary disability benefits begin to accrue, the carrier shall notify the treating doctor of the requirements of this section.
§ 440.15(3)(d), Fla. Stat. (2006). In these two subsections of the statute, the Legislature is plainly equating a medical finding of maximum medical improvement with the status that exists by law if the employee has not reached maximum medical improvement six weeks before the expiration of temporary benefits.
When these statutes are read together, as they should be, it is clear that an in- ■ jured worker who is still totally disabled at the end of the maximum period of eligibility for temporary total disability benefits is deemed to be at maximum medical improvement, regardless of any potential for improvement. The doctor is required by section 440.15(3)(d) to assess and certify the injured worker’s “permanent impairment,” a condition that can have but one meaning under section 440.03(22): a condition existing “after the date of maximum medical improvement.” It follows that the permanent impairment rating that must be given at that time is the legal equivalent of a medical finding that the worker has reached maximum medical improvement.
We need not apply canons of statutory interpretation to arrive at this conclusion. All that is required is basic deductive reasoning. If a worker must get a permanent impairment rating before the expiration of temporary benefits, and if a permanent impairment rating can only exist after the worker has reached maximum medical improvement, there can be no other conclusion to draw but that the rating is equivalent to a finding that the worker has achieved maximum medical improvement. We could avoid this conclusion only if we were to assume that the Legislature meant to create a form of statutory maximum medical improvement for impairment benefits while retaining the requirement of medical evidence for the purpose of obtaining disability benefits. However, we would have to read a great deal into the statute to make a distinction such as this.
A close reading of the briefs in this case reveals that the parties do not dispute the fact that maximum medical improvement can exist as a matter of law upon the expiration of temporary disability benefits. Workers’ compensation lawyers and judges commonly refer to this status as “statutory MMI.” More specifically, the dispute in this case focuses on the question of whether a claimant’s having reached statutory MMI is enough to make a claim for permanent total disability ripe for adjudication. The employer contends that it is not. In the initial brief filed on behalf of the employer, counsel argues that an injured worker must present medical evi *630 dence that he or she has reached maximum medical improvement, a concept he refers to as “physical MMI.”
The employer’s argument on this point must fail, because there is nothing in the Workers’ Compensation Law that distinguishes between “statutory MMI” and “physical MMI.” Neither phrase is used in the statute. Although the concept of statutory MMI advanced by the claimant arises as a matter of law, whereas the concept of “physical MMI” advanced by the employer arises from the evidence, we have no reason to conclude that the effect is any different. Nothing in the Workers’ Compensation Law suggests that, if a worker is deemed to be at maximum medical improvement based on the operation of the disability and impairment statutes, the status of that worker is somehow different from that of a worker who can prove by evidence that he or she is at maximum medical improvement. In both situations, the claimant is eligible to file a claim for permanent total disability benefits.
This interpretation of the Workers’ Compensation Law does not blur the distinction between temporary and permanent disability benefits, as the majority has concluded. It is true that the Legislature placed a fixed time limit on the right to recover temporary disability benefits, but the purpose of this time limit was not to create a gap in which a totally disabled but still improving worker will be uncompensated. To the contrary, it is clear from the overall statutory scheme that the time limit was designed as a deadline, to force the parties to make a relatively prompt decision about the need for permanent total disability benefits.[8]
The conclusion that disability benefits are available throughout the course of a worker’s disability is not only supported by the text of the applicable statutes, it is also consistent with the intent of the Legislature as expressed in the Workers’ Compensation Law. Section 440.015, Florida Statutes (2006) states, “It is the intent of the Legislature to ensure the prompt delivery of benefits to the injured worker.” We can assume from this statement that the Legislature meant to require the continuous payment of disability benefits for an injured worker who continues to be disabled and that the 104-week limit on temporary disability benefits does not effectively terminate the injured worker’s right to just compensation.
In contrast, the majority’s interpretation would create an arbitrary deadline that would effectively deny an injured worker just compensation. If the majority is correct, there could be a gap for an indefinite period of time, during which an injured worker is not compensated at all, even though there is no dispute that the worker is totally disabled. A disabled worker who has exhausted the 104 weeks of temporary benefits but who has still not fully recovered from the workplace injury might have to wait months or perhaps years before disability benefits would resume, even though the employee remains totally disabled all the while. By accepting this result, the majority has effectively concluded that a law designed to provide compensation to injured workers actually denies compensation to some injured workers. In effect, the majority has de-. cided that the law does not provide benefits, much less the “prompt delivery of *631 benefits,” to injured workers like the claimant in this case.
The interpretation advanced by the majority would also promote a disparity in the way that disabled workers are treated. And the workers who are the most likely to be caught in the gap that would exist under the majority’s interpretation are those who have been seriously injured. A disabled worker who reaches maximum medical improvement relatively quickly is fully compensated. But a disabled worker who is told that he or she may be well enough to return to work someday may have no compensation at all beyond the initial 104-week period. I do not think that the Legislature intended to create such a disparity. It is reasonable to conclude that the Legislature meant to ensure the “prompt delivery of benefits” to all workers who are injured on the job, not just some of them. See, e.g., Gauthier v. Fla. Int’l Univ., 38 So.3d 221, 224 (Fla. 1st DCA 2010).
The conclusion that a disabled worker is entitled to receive disability benefits continuously throughout the course of his or her disability is consistent not only with the stated intent of the law but also with the overall statutory scheme. Section 440.15(l)(d) enables an employer to discontinue the payment of disability benefits to a worker who has regained earning capacity through rehabilitation. Thus, the status of maximum medical improvement is not truly permanent. When an employee is deemed to be at maximum medical improvement by operation of law, the employer is not stuck with that determination forever. The worker’s status and eligibility for benefits can change with the circumstances.
On the other hand, an interpretation that would create a potential gap in disability benefits could result in an uncorrectable error. As an illustration, we need only consider the situation that will exist in the present case if it turns out that the surgeon was overly optimistic about the claimant’s prospect of recovery. If there is no change in the claimant’s medical condition by the time the surgeon is willing to say that the claimant has reached maximum medical improvement, the logical inference would be that the claimant was, in fact, at maximum medical improvement much earlier. Yet there is nothing in the law that would enable the claimant to recover the disability benefits he should have been receiving in the meantime. It is reasonable to conclude that, if the Legislature had intended to create a gap in the payment of disability benefits, it would have at least provided a remedy for the recovery of lost benefits if it could be shown later that the claimant was actually at maximum medical improvement all along and should have been receiving those benefits.
The majority has pointed out that the Oswald decision has been cited in this court a number of times. That is true, but these cases do not serve to strengthen the precedent. If anything, they reveal that the rule in Oswald has not worked out as intended. It is clear now that the exception the court was attempting to create to ensure the continuous flow of disability benefits for those who are truly disabled is very rarely applied. Instead, the rule in Oswald has been used almost exclusively as authority to deny benefits. The Workers’ Compensation Law was designed to provide injured workers just compensation for their injuries at reasonable cost to their employers. See § 440.015, Fla. Stat. Yet, by this court’s interpretation of the law in Oswald, it has become an impediment to the recovery of just compensation for a distinct class of severely injured workers.
*632 We are not here to make policy, and I certainly do not suggest that we should interpret a statute based on the wisdom or fairness of the outcome. But if we have repeatedly interpreted a statute in such a way as to produce a result that is patently unjust, it seems to me that we should study the statute again to be sure that we are reading it correctly. Since Oswald, the court has essentially held that an employer has authority of the Workers’ Compensation Law to deny disability benefits to an injured worker who has exhausted his or her temporary benefits so long as the employer can prove that the worker may improve enough to return to work at some point in the future. With due respect for my colleagues, I do not believe we are required to reach such an unjust result in order to protect the integrity of the time limit on eligibility for temporary benefits.
The majority cites Thompson v. Florida Industrial Commission, 224 So.2d 286 (Fla.1969) in support of its holding, but that decision does not compel adherence to Oswald. The 1961 statute the court was interpreting in Thompson had a limit of 350 weeks on temporary total disability benefits and it had no provision for statutory maximum medical improvement. When the Legislature reduced eligibility for temporary total disability benefits from five years to two years, it put in place for the first time a provision for statutory maximum medical improvement. If the statute the court was interpreting in Thompson had a provision like this for statutory maximum medical improvement, the stated obstacle to the recovery of permanent disability benefits would have been removed.
For these reasons, I would recede from our decision in Oswald and subsequent cases holding that there is a gap in benefits and I would affirm the order awarding the claimant permanent total disability benefits. The claimant reached maximum medical improvement as a matter of law, and the evidence demonstrates that he is totally and permanently disabled.

. Having served on the panel in Oswald, unlike any of the judges who have joined in this dissent, I alone accept responsibility for the error.

. The two-year limit on temporary disability benefits was enacted as a part of the Workers’ Compensation Law in 1993. See § 440.15(2)(a), Fla. Stat. (Supp. 1994). Before that, the time limit on temporary disability benefits was five years. See § 440.15(2)(a), Fla. Stat. (1993).